IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JUNE 1997 SESSION

FILED

August 12, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 03C01-9608-CC-00321 |
| Appellee, | ) | |
| | ) | BLOUNT COUNTY |
| VS. | ) | |
| | ) | HON. D. KELLY THOMAS, JR., |
| STEVEN J. HAYNES, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Sentencing) |

FOR THE APPELLANT:　　　　　　FOR THE APPELLEE:


MACK GARNER
District Public Defender
419 High St.
Maryville, TN  37804

JOHN KNOX WALKUP
Attorney General & Reporter

MARVIN E. CLEMENTS, JR.
Asst. Attorney General
450 James Robertson Pkwy.
Nashville, TN  37243-0493

MIKE FLYNN
District Attorney General

PHILLIP MORTON
Asst. District Attorney General
Blount County Courthouse
Maryville, TN  37804


OPINION FILED:_____


**AFFIRMED**


JOHN H. PEAY,
Judge

**O P I N I O N**

The defendant was declared a Motor Vehicle Habitual Offender in September 1993. During a five month period from August 1995 to January 1996, the defendant was charged with violating the Motor Vehicle Habitual Offenders Act along with various other traffic related offenses. On February 14, 1996, he pled guilty to all charges. After a hearing, he received an effective sentence of six years.

In this appeal as of right, the defendant complains that the trial court erred when it refused to place him on probation or in Community Corrections. After a review of the record, we find no error and affirm the judgment of the court below.

As noted above, the defendant pled guilty to numerous charges. Specifically, he pled guilty to four counts of violating the Motor Vehicle Habitual Offenders Act, two counts of driving on a revoked license, one count of failure to yield, one count of evading arrest, and two counts of reckless endangerment. He received a one year sentence for the Motor Vehicle Habitual Offender violation in case #9260; a one year consecutive sentence for the Motor Vehicle Habitual Offender violation in case #9340; a two year consecutive sentence for the Motor Vehicle Habitual Offender violation in case #9335; and a two year consecutive sentence for the Motor Vehicle Habitual Offender violation in case #9343. The sentences for the remaining convictions are concurrent to case #9260. Thus, the defendant has an effective sentence of six years.

At his sentencing hearing, the defendant testified that he had known that he was not supposed to drive, and that he had not driven prior to August 1995. He testified that on August 16, 1995, he had had to drive to where his nephew was residing in order to tell the nephew that he needed a ride to work. The defendant's wife usually took him to work but she was unable to do so on this day because she was hospitalized.

2

While the defendant was on his way to see his nephew, he was stopped by police officers for having only one headlight.

The defendant testified that after this occurred, he had continued to drive because he thought that any punishment he would receive from the first offense would run concurrently with any subsequent offenses. Consequently, the defendant again drove his vehicle on October 21, 1995. The defendant testified that he had been taking the vehicle to be repaired when he was stopped by police officers.

Then on November 5, 1995, the defendant decided to drive to his mother's house for dinner. He testified that he had had to drive because his wife was away taking care of a relative. While the defendant was on his way, police officers recognized him and attempted to pull him over. The defendant, however, sped up in an effort to get away from the officers. He was arrested the next day at his home.

The final violation occurred on January 13, 1996. This time the defendant had just picked up his vehicle from the repair shop and was returning home when he was spotted by police officers. Again the defendant increased his speed in order to get away from the officers. He was arrested later that evening at his home.

The defendant admitted that while trying to elude the police he had exceeded the speed limit. However, he denied forcing other vehicles off the road in order to avoid arrest. The defendant also admitted that he had driven his vehicle about six other times when he had not been stopped by police. He testified that important reasons had led him to decide to drive.

The defendant testified that at the time of the hearing he was employed as

a heavy equipment operator with Earthworks, Inc. He further testified that he is married and has three children under the age of eighteen. He also testified that he does not abuse drugs or alcohol. His pre-sentence report indicates a history of criminal offenses that are mainly motor vehicle related.

The defendant now appeals and argues that he should have been placed on full probation or in Community Corrections.[1] When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

T.C.A. § 40-35-103 sets out sentencing considerations which are guidelines for determining whether or not a defendant should be incarcerated. These include the need "to protect society by restraining a defendant who has a long history of criminal conduct," the need "to avoid depreciating the seriousness of the offense," the determination that "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or the determination that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." T.C.A. § 40-35-103(1).

In determining the specific sentence and the possible combination of

---

[1]We recognize that there has been some question as to whether a defendant convicted of violating the Motor Vehicle Habitual Offenders Act can be sentenced to probation. We have chosen to follow the concurring opinion in State v. Michael Richmond, No. 02C01-9410-CR-00217, Shelby County (Tenn. Crim. App. filed Sept. 13, 1995, at Jackson). Most cases also appear to follow this course. Thus, our analysis addresses the appropriateness of denying both probation and Community Corrections.

4

sentencing alternatives, the court shall consider the following: (1) any evidence from the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and the arguments concerning sentencing alternatives, (4) the nature and characteristics of the offense, (5) information offered by the State or the defendant concerning enhancing and mitigating factors as found in T.C.A. §§ 40-35-113 and -114, and (6) the defendant's statements in his or her own behalf concerning sentencing. T.C.A. § 40-35-210(b). In addition, the legislature established certain sentencing principles which include the following:

> (5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and
>
> (6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

T.C.A. § 40-35-102.

After reviewing the statutes set out above, it is obvious that the intent of the legislature is to encourage alternatives to incarceration in cases where defendants are sentenced as standard or mitigated offenders convicted of C, D, or E felonies. However, it is also clear that there is an intent to incarcerate those defendants whose criminal histories indicate a clear disregard for the laws and morals of society and a failure of past efforts to rehabilitate.

In this case, the trial judge stated that while the defendant was presumed to be an eligible candidate for probation, the presumption had been overcome by several factors. The court cited the defendant's "long history of criminal conduct," the need to

5

avoid depreciating the seriousness of the offense, and the defendant's lack of potential for rehabilitation. The trial judge pointed out that the defendant had driven many times, although he knew he should not, and was only charged with four driving violations despite his being behind the wheel numerous times. The trial judge further pointed out that after being stopped once, the defendant continued to drive and ultimately received four different sets of offenses in a five month period. He also noted that the defendant was dangerous because of his attempts to evade arrest and disrupt traffic. He concluded that the defendant had made a conscious decision to violate the law. Therefore, the trial judge ordered the defendant to serve his six year sentence in the Department of Correction.

Thus, it is quite clear that the trial court's conclusion is amply supported by the evidence. Probation is not proper for this defendant; we affirm the trial court's decision to deny probation.

We now turn to the question of whether the defendant should have been granted Community Corrections. The Community Corrections Act of 1985 establishes a community based alternative to incarceration for certain offenders and sets out the minimum eligibility requirements. T.C.A. §§ 40-36-101 through -306. This Act does not provide that all offenders who meet the standards are entitled to such relief. State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The purpose of the Tennessee Community Corrections Act of 1985 is to establish a policy to punish selected, nonviolent felony offenders through community-based alternatives to incarceration. The goals of the Community Corrections Act include the following: maintaining safe and efficient community correctional programs, promoting accountability of offenders to their local community, filling gaps in the local correctional system through the development of a range of sanctions and services, reducing the

number of nonviolent felony offenders in correctional institutions and jails, and providing "opportunities for offenders demonstrating special needs to receive services which enhance their ability to provide for their families and become contributing members of their community . . . ." T.C.A. § 40-36-104(1)-(5).

In this case, the trial court also denied the defendant's request for Community Corrections. This determination was based on the same reasoning for denying the defendant's request for probation. Again, as the conclusion was sufficiently supported by the evidence, we see no reason to disturb the trial court's decision.

Thus, we conclude that the defendant has failed to carry his burden of demonstrating that the evidence preponderates against the trial court's findings, and therefore, we affirm the judgment below.

_____          _____
                                         JOHN H. PEAY, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
J. CURWOOD WITT, JR., Judge